# COURT OF ERRORS AND APPEALS

## OF THE

# STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY.

### MARCH TERM, 1901.

---

TIMOTHY BURNET, complainant and respondent,

*v.*

OLIVER DEAN et al., defendants and appellants.

[Filed June 17th, 1901.]

1. Taxes in the village of South Orange are a paramount lien for three years only from the time they are payable.

2. The acts of 1888 (*P. L. of 1888 p. 97*) and 1895 (*P. L. of 1895 p. 671*) are unconstitutional—*first*, because the title is misleading; *second*, because the basis of classification adopted by the legislature is illusory.

---

On appeal of South Orange from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *15 Dick. Ch. Rep. 9.*

*Mr. James McC. Morrow,* for the appellants.

*Messrs. Gallagher & Richards,* for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The bill in this case was filed to foreclose a mortgage held by Timothy Burnet, the complainant, on lands in the village of South Orange, dated April 10th, 1891.

The village of South Orange is made a defendant because it claims a paramount lien on the mortgaged premises for taxes assessed by it for the years intervening between 1877 and the date of the mortgage, and also for certain taxes assessed since the execution of the mortgage up to and including the year 1897. The prayer is that these taxes may be declared not to be a lien.

The only question involved is whether the lien of these taxes is paramount to the mortgage.

The taxes have not been paid since 1874, except the taxes for the years 1897, 1898 and 1899, which have been paid since the bill was filed.

This is a question of statutory construction, as the lien for taxes has its origin in, and is entirely dependent upon, legislative enactment.

There was no general law establishing the lien of taxes, and giving it priority over other encumbrances on land, until the act of March 14th, 1879, was passed. *P. L. of 1879 p. 340.*

The village of South Orange was incorporated by the act of March 25th, 1869 (*P. L. of 1869 p. 645*), with very limited powers.

The charter was amended by the act of April 4th, 1872 (*P. L. of 1872 p. 1203*), and again by the act of 1875. *P. L. of 1875 p. 395.*

By the twenty-sixth section of the act of 1875 it was provided that the collector of said village "shall collect the taxes in the same manner and at the same time that the taxes in the townships of said county are assessed and collected."

The correct interpretation of this provision is that the taxes

Burnet *v.* Dean.

in the village shall be collected in the manner, from time to time, provided by law for the collection of taxes in townships, so that any change in the manner of collecting taxes in townships shall apply to the village. *Dugan* v. *Jersey City, 21 Vr. 359; Hohenstatt* v. *Bridgeton, 33 Vr. 169.*

Under the law as it existed prior to 1879 there was no provision making the lien of taxes paramount to that of prior mortgages, and the lien given was lost unless there was a sale for the taxes within two years. This disposes of the lien for the taxes levied prior to 1879, as no such sale was made.

I agree with the view expressed by the vice-chancellor that the act of 1879, making taxes a paramount lien for two years, and the act of March 17th, 1882, extending the lien to three years, are applicable to villages.

Unless, therefore, subsequent legislation has further extended the lien of the taxes in controversy, the village of South Orange has lost its lien for all taxes levied prior to the year 1897.

The act of February 22d, 1888 *(P. L. of 1888 p. 97)*, and its supplement of March 25th, 1895 *(P. L. of 1895 p. 671)*, make the taxes a prior lien until they are paid, and if these laws are constitutional, the encumbrance of the mortgage is subsequent and subject to their payment.

The title of the act of 1888 is "An act concerning taxes and assessments in villages and other municipal corporations governed by a board of trustees, and making same a first lien on real estate and authorizing sale for the payment of the same."

The act of March 25th, 1895, is a supplement, with the same title.

The first section of the act of 1888 provides

"that such taxes and assessments as may be lawfully levied, imposed or assessed by any board of trustees of any village or other municipal corporation governed by a board of trustees *. * * shall be, become and remain a first and paramount lien upon the lands or real estate on account of which the same were so levied or assessed, until paid."

This provision makes it clear that the act was intended to apply only to such villages as were governed by a board of trustees and such other municipal corporations as were governed by a board of trustees.

If the title of this act was "An act concerning taxes and assessments in villages of this state," and was made to apply, by its enacting clauses, to all the villages of this state, it could not be doubted that, under the decisions of this court, it would be a general law, and valid and effectual to establish the superior position of South Orange in this case.

The constitutional mandate is that "every law shall embrace but one object, and that shall be expressed in the title."

The title of these acts of 1888 and 1895 declare that the proposed legislation shall apply "to villages governed by a board of trustees and other municipal corporations governed by a board of trustees."

There may lie somewhere concealed in this title a purpose to legislate only for villages, but to declare that such a purpose is expressed in this title is to assert what is clearly disproved by simply reading it.

Who knows to what villages or to what other municipal corporations the title of this act or its provisions apply by reason of the fact that they are governed by a board of trustees?

It is true that courts will take notice of all public acts without specially pleading them, but this rule does not charge the general public, for whose benefit the constitutional provision is intended, with a knowledge of the fact (if such were the fact) that villages only are governed by a board of trustees. The insistment that the title includes villages only is argumentative; it does not show that it is expressive of the object of the act.

The argument is this: All villages have a board of trustees, and therefore the title includes all villages. No other municipality has a board of trustees, and therefore it does not include any municipality except villages. It cannot be denied that it does apparently include other municipalities, and it is therefore manifestly misleading.

The rule that all men are presumed to know the law, however broadly applied, does not make the title of these acts an express declaration that it is an act concerning villages only.

That expression must be found in the title of the act to validate it, and it is not there.

The strictness with which this provision of the organic law

is enforced is shown by the cases which hold that the title of an act is a limitation upon the sphere within which its enacting clauses can be given effect. *Evernham* v. *Hulit, 16 Vr. 53;* *Hendrickson* v. *Fries, 16 Vr. 563; Dobbins* v. *Northampton, 21 Vr. 496; Allen* v. *Bernard's Township, 28 Vr. 303; Cooper* v. *Springer, 48 Atl. Rep. 605.*

It logically follows that an act, which by its title purports to apply to all classes of municipalities, will not be valid if its provisions are restricted to one of the classes. *Beverly* v. *Waln, 28 Vr. 144.*

The reason is that the title would be misleading instead of clear and expressive.

In my judgment it was to guard against such legislation as that under review that the interdict in the fundamental law was adopted. If this title is approved, an ingenious way has been devised to conceal the purpose of legislative acts.

Again the legislature, in the title of these acts, proclaimed that it intended to pass an act concerning villages governed by trustees, and other municipalities governed by trustees; not concerning all, but concerning some villages and some other municipalities.

It expressly negatives the idea that the act was to apply to villages only. The basis of classification adopted and declared by the legislature was the fact that these political corporations were governed by a board of trustees.

Language cannot express such intention more clearly.

In *Ross* v. *Winsor, 19 Vr. 95,* an act providing "for additional powers and certain changes in the government of certain localities governed by commissioners," was held to be special and unconstitutional.

The like judgment was rendered in *Dobbins* v. *Long Branch Commissioners, 30 Vr. 146.* The mere mode of government furnishes no substantial basis of classification for legislation.

So in the case *sub judice* the classification adopted is illusory and unsubstantial. There is no reason why municipalities not governed by a board of trustees, whether villages, towns, boroughs or cities, should not have a like extension of the lien for taxes and assessments.

17

Burnet *v.* Dean.

The town of Union, in the county of Hudson, is governed by six councilmen. *P. L. of 1864 p. 561.*

The town of Clinton, in the county of Hunterdon, is governed by a mayor and common council. *P. L. of 1865 p. 778.*

The act concerning the town of Newton makes the town committee the ruling body. *P. L. of 1864 p. 200.*

The town of Keyport is governed by a "board of commissioners." *P. L. of 1870 p. 1022.*

The town of Red Bank is governed by a "board of commissioners." *P. L. of 1870 p. 1070.*

The legislature having declared its will to be that the acts of 1888 and 1895 should apply as well to other municipalities governed by a board of trustees as to villages so governed, it cannot reasonably be conceived that the towns of Keyport and Red Bank were intended to be excluded from the benefits of this legislation by the narrow criticism that a "board of commissioners" is not a "board of trustees," within the meaning of those acts.

"A board of commissioners" is just as much "a board of trustees" as if it had been so denominated in the incorporating acts, and in my judgment the towns of Keyport and Red Bank are within the operation of the acts of 1888 and 1895.

The effect of this is to render these acts special and local, because other towns and other municipalities not governed by a board of commissioners or a board of trustees are not made subject to them. The basis of classification being illusory, the act is special and not general.

These acts are therefore invalid for the reasons:

(1) That the title is misleading and not express.

(2) The basis of classification adopted by the legislature is illusory and unsubstantial.

I agree, therefore, with the opinion of Vice-Chancellor Pitney that taxes in South Orange are a paramount lien for three years only from the time they are payable.

The decree of the chancellor should be affirmed.

COLLINS, J. (dissenting).

The act of 1888 and its supplements plainly refer only to municipal corporations, and therefore not to unincorporated villages. An incorporated village is defined to be "a small town

with limited corporate powers exercised by a board of trustees."
*Stand. Dict.* This definition has been approved in this court.
*Hermann* v. *Guttenberg, 34 Vr. 616.* The legislation in ques-
tion includes all incorporated villages. The draughtsman of the
act of 1888, in order to make sure of excluding no municipality
properly belonging to the class, so framed title and enactment
as to embrace all municipal corporations, if there were any such
that were, in fact, villages, though not so in name. This un-
necessary precaution cannot invalidate the law. There was, and
is, no such corporation, unless we adopt the strained construc-
tion that the governing bodies of all municipalities are trustees.
as, in a broad sense, they are. That construction, however,
would not avoid the law, but would make it general beyond
question. Taking the narrower construction we will find that
the theoretical definition above quoted is also practically correct
in this state. Prior to the adoption of the constitutional amend-
ments of 1875 there were but two incorporated villages, namely,
South Orange (*P. L. of 1869 p. 645; P. L. of 1872 p. 1203;
P. L. of 1875 p. 395*) and Irvington. *P. L. of 1874 p. 623.*
Both were governed by boards of trustees. The general act
incorporating villages (*Gen. Stat. p. 3718*) provides for such
boards. No municipality except a village has been, or is, so
governed. Before 1860 certain property-owners, on their filed
map, styled the territory embraced in it the village of Carlstadt,
in the county of Bergen. This territory lay, and still is, within
the township of Lodi. By "An act to authorize the inhabitants
of the village of Carlstadt, in the county of Bergen, to improve
the sidewalks of the streets of said village," approved March
12th, 1860 (*P. L. of 1860 p. 234*), the *landowners* of this "vil-
lage" were authorized to elect commissioners for the purpose of
compulsory improvement of sidewalks. The taxes and assess-
ments levied were collected by the township authorities. By a
supplement (*P. L. of 1869 p. 551*) the powers of the act were
extended to the streets themselves, and by a further supplement
(*P. L. of 1873 p. 770*) to lighting the streets. By this last sup-
plement all powers were vested in a board of trustees, and a clerk
and collector were authorized. This legislation as to Carlstadt,
unconstitutional as it probably is, doubtless prompted the phrase-
ology of the act of 1888. By any possible criterion taxes and

assessments leviable under it come within the general legislation of 1888 and 1895. A careful search discloses no municipality governed by a board of trustees that is not a titular village. Such legislation is therefore general, under recent adjudications. It is, in my judgment, prospective only.

The decree should be reversed, and the taxes levied since 1887 should be adjudged paramount liens.

*For affirmance*—VAN SYCKEL, GARRISON, FORT, GARRETSON, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VROOM—9.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GUMMERE, COLLINS, HENDRICKSON, VOORHEES—6.